**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | | |
|---|---|---|
| DEBORAH A. DICKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 11-0738-CV-W-NKL-SSA |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Deborah Dickson challenges the Social Security Commissioner's denial of her application for supplemental security income benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et. seq*., and XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et. seq*.

Dickson argues that the Administrative Law Judge ("ALJ") erred by failing to include certain physical and mental limitations in assigning Dickson's residual functional capacity ("RFC"), by finding Dickson's depression to be not severe under the Act, and by failing to identify inconsistencies in the record in discounting Dickson's credibility. Because the Court finds some of these argument persuasive, the Court reverses the ALJ's decision and remands the case for further consideration.

**I. Background**

The complete facts and arguments are presented in the parties' briefs and will be

duplicated here only to the extent necessary.[1] Dickson protectively filed an application for a period of disability, disability insurance benefits, and supplemental social security income on February 25, 2008, under Title II and Title XVI of the Social Security Act. Dickson alleged she became disabled beginning January 25, 2008. In her Disability Report, she alleged disability due to arthritis, fibromyalgia, high blood pressure, obesity, and severe anemia. ALJ James Stubbs held hearings on January 14, 2010, and May 26, 2010, which ended in a denial of all benefits for Dickson. Dickson then brought this appeal.

The significant mental health treatment notes begin on January 29, 2010, when Dickson was brought to the emergency department at Truman Medical Center by the police due to her expressing suicidal thoughts. Dickson was admitted on a ninety-six hour hold and remained an inpatient until February 12, 2010. Dickson was diagnosed with a Mood Disorder-Not Otherwise Specified.

On March 9, 2010, Dickson underwent a psychiatric evaluation at Truman Medical Center Behavioral Health. Dickson was homeless and living with friends. Dickson reported that she engaged in self-sabotaging behaviors at work and frequently had thoughts of self harm. Dickson reported a history of depression since age seven, but had not had any treatment, including medication, since 2006. Dickson's grooming, insight, and judgment were all fair. Mental status examination showed intact memory, normal speech, average intellect, fair attention, cooperative behavior, "fine" mood, and appropriate affect. Dickson was assigned a GAF score of 50 and case management was recommended. Doctors adjusted

[1] Portions of the parties' briefs are adopted without quotation designated.

Dickson's diagnosis to major depressive disorder and anxiety disorder.

On March 15, 2010, Dickson presented with depression and anxiety. She reported that she experienced partial symptom relief with the use of Cymbalta and Klonopin, and requested case management assistance. On March 24, 2010, Dickson returned and informed Dr. Saleem that the medications were not helping, and that her employment and housing situation remained the same. Dr. Saleem attributed Dickson's depressed mood and low energy to her "situational stressors regarding housing and finances." (Tr. 427). Dickson's diagnosis was changed from a Mood Disorder-Not Otherwise Specified to a Major Depressive Disorder-Recurrent and an Anxiety Disorder-Not Otherwise Specified. Dickson returned for a follow-up appointment on March 29, 2010. Dickson's Cymbalta was increased and arrangements were made for her to enter therapy.

Sterling Moore, M.D., who is board-certified in internal medicine and rheumatology, testified as a medical expert at Dickson's hearing before the ALJ. Dr. Moore testified that there was evidence of osteoarthritis in Dickson's knees and degenerative changes to her lower back. In addition, x-rays revealed borderline degenerative changes of the bilateral elbows and feet. Dickson's current body mass index was 59 using 450 pounds as her present weight. Dr. Moore opined that Dickson probably needed a cane for balance but not for ambulation. Dickson also had a history of generalized body pain. Dr. Moore opined that there was a diagnosis of fibromyalgia throughout the record but "the criteria required by Social Security and as recommended by the America College of Physicians" was not met because the record did not reflect any examination for tender points. Dr. Moore further

opined that Dickson may have fibromyalgia and he suspects that she does have fibromyalgia, but the diagnosis is not supported in the file. Dr. Moore discussed that Dickson's fatigue could be due in large part to her depression but that mental health issues were outside his area of expertise and he could not provide an opinion regarding the functional limitations resulting from her depression.

As a result of her physical impairments, Dr. Moore opined that Dickson could stand and walk two hours in an eight hour day and sit six hours in an eight hour day and would need the ability to change positions every thirty minutes for one to two minutes in order to cope with her pain. (Tr. 81).

The ALJ asked a vocational expert to assume a hypothetical claimant with the same characteristics opined by Dr. Moore. (Tr. 82-83). The vocational expert testified that such an individual could perform Plaintiff's past positions as a receptionist, and order taker. The ALJ, in his decision, found that Dickson had multiple severe impairments including osteoarthritis; morbid obesity; degenerative joint disease in the knees and lumbar spine; and anxiety. The ALJ further found that Dickson's testimony as to the severity of her medical condition was not fully credible. [Doc. # 5-3 at 18]. The ALJ assigned an RFC that included most of the limitations discussed by Dr. Moore, but did not include the requirement that Dickson be allowed to change positions every thirty minutes. The ALJ found that Dickson could perform her past work as an order taker and a receptionist and was not disabled.

**II. Analysis**

In reviewing a denial of disability benefits, the Court considers whether the ALJ's

decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). This standard is satisfied by evidence that a reasonable mind would find adequate to support the ALJ's conclusion. *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).

**A. Whether the ALJ properly assigned Dickson's RFC**

Dickson argues that the ALJ, in assigning an RFC, improperly rejected Dr. Moore's "opinion detailing Ms. Dickson's need to change position from sitting to standing/walking every thirty minutes." [Doc. # 9 at 14]. The ALJ did not explain why he disregarded this aspect of the testimony from Dr. Moore, to whom the ALJ otherwise assigned "great weight." [Doc. # 10 at 18]. Thus, the ALJ did not refer to any evidence, medical or otherwise, that contradicted this limitation suggested by Dr. Moore. An ALJ can only reject medical evidence "based on contradicting medical evidence, not on the ALJ's own judgments or opinions." *See Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008). The ALJ erred in rejecting this testimony without providing a reason for doing so.

Dickson also argues that the ALJ erred by assigning Dickson "moderate" difficulties in various mental abilities, which the ALJ defined in his hypothetical to a vocational expert as "a limitation in this area but the individual is still able to function satisfactorily." (Tr. 83-84). Dickson argues that substantial evidence did not exist for the ALJ's conclusion in light of Dickson's hospitalization for depression and consistent GAF score of 50 – which the ALJ recognized as indicating "serious symptoms" or "serious impairment in social, occupational, or school functioning." [Doc. # 5-3 at 18 n.1]. The Commissioner claims that the ALJ's

conclusion appropriately reflected the record because it assessed limitations. The Court disagrees. The ALJ did not explain why, on the one hand, he concluded that Dickson can function "satisfactorily" in mental areas while, on the other hand, he acknowledged that medical examiners had assessed Dickson "serious" mental limitations. In this regard, too, the ALJ appears to have rejected medical evidence based on his own opinion, and remand is thus appropriate.

**B. Whether Dickson's depression was severe under the Act**

An impairment is not "severe" if it does not have a significant impact on an individual's physical or mental ability to do basic work activities. *Kirby v. Astrue,* 500 F.3d 705, 707 (8th Cir. 2007). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard...." *Id.* (internal citations omitted).

Dickson argues that the ALJ erred in finding her depression not severe. Dickson points out that she has been hospitalized for depression, diagnosed with major depressive disorder, including suicidal thoughts, and has been prescribed psychotropic medications and therapy. The Commissioner points out that Dickson received no treatment or diagnosis for depression between 2007 and 2010, and argues that in 2010 Dickson merely suffered a single, albeit serious, bout of situational depression. Depression need not be considered severe if it is both situational and improves with medication and counseling. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010). Indeed, the ALJ discussed in detail Dickson's hospitalization in January and February of 2010, but also discussed in detail an unremarkable assessment of Dickson's mental condition in March 2010, in which Dickson reported her

mood as “fine”and was noted as cooperative with appropriate affect. [Doc. # 5-3 at 15]. The ALJ failed to mention that throughout February and March, Dickson’s physicians continued to diagnose her with major depressive disorder, continued to prescribe and increase prescription of medication for depression, referred Dickson for therapy, and continued to assess her a GAF score of 50. In light of these facts, substantial evidence does not exist on the record to support the ALJ’s theory that Dickson recovered to the point that her depression was no longer a significant limitation on her ability to work.

**C. Whether the ALJ properly discounted Dickson’s credibility**

The Eighth Circuit has set out several factors an ALJ should consider in assessing a claimant’s credibility: “the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions.” *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (internal quotes omitted). An ALJ need not discuss each such factor “as long as he acknowledges and considers the factors before discounting a claimant's subjective complaints.”*Id.* (internal quotes omitted).

Here, the ALJ did not mention any of these factors, but discounted Dickson’s credibility in a single paragraph of boilerplate that made no specific reference to the facts of Dickson’s case. The Commissioner argues that the Court should look at the ALJ’s entire analysis in assessing whether the ALJ properly discounted Dickson’s credibility, citing *Wiese v. Astrue*, 552 F.3d 728, 733-34 (8th Cir. 2009). But this case is distinguishable from *Wiese*, because here the ALJ did not “provide[] a thorough analysis of the inconsistencies he noted

in the record." *Id*. at 734. Rather, the Commissioner only points to one statement in the ALJ's decision that acknowledges an inconsistency in the record – the ALJ taking note that Dickson was fired from her job for inappropriate behavior and attendance. But the Commissioner also acknowledges that Dickson testified that her behavior was due to a mental condition, and the ALJ did not explain how that testimony was inconsistent with other evidence in the record. The ALJ erred in this regard and remand is thus appropriate.

**III. Conclusion**

Accordingly, it is hereby ORDERED that Deborah Dickson's Petition [Doc. # 4] is GRANTED. The decision of the ALJ is REVERSED and remanded for reconsideration consistent with this Order.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 9, 2012
Jefferson City, Missouri